Turley J.
delivered the opinion of the court.
There have been many points made, and argued with much zeal in this" case, most of which we deem it unnecessary to investigate, because in our opinion, the case turns upon the question, as to whether there has been a legal execution of the power of appointment given by the deed of trust to Mary Stephens; and under which the plaintiff Gilbert Marshall claims. If there has been a legal execution of the power, the title to the slaves in controversy is vested in him, otherwise not.
It appears from the proof that about the 17th day of May, 1827, John Stephens conveyed to John H. Wooldridge among other slaves, a negro woman named Alley, upon trust, that he *172 ^should hold, use and possess, her and her increase for the use, support and maintainance of Mary Stephens, wife of him the said John, during her life and at her death, if not disposed of by her previously, either by will or deed of gift, the said Wooldridge trustee was to convey to the heirs at law of her the said Mary excluding her husband.
At the time of the execution of this deed of trust, John Stephens was somewhat indebted, and afterwards became more so, and Mary Stephens was much harassed by these debts, the creditors attempting to obtain satisfaction of them out of the negroes conveyed for her use in the deed of trust. With the view of satisfying those debts and saving the trust property, which she supposed was liable for them, the proof shows that she made an arrangement with Wooldridge the trustee, who was also her son-in-law, by which he agreed to pay the debts, which he did by borrowing money for that purpose. The proof also shows, that Mary Stephens was desirous that none of the negroes conveyed should go out of the family, and that after Wooldridge had agreed to pay the debts, she -conveyed to him in writing, her interest in the negro woman Alley and her child Jane, born after the execution of the deed of trust; but whether this conveyance was a bill of sale or a deed of gift, the proof leaves wholly uncertain. That this conveyance was made without fraud or imposition on the part of Wooldridge, and with the free will and consent of Mary Stephens, there can be no doubt from the proof.
On the 30th day of November, 1829, and subsequent to the conveyance by Mary Stephens to John Wooldridge, he being unable to raise the money to repay the sum borrowed, sold for that purpose, the two negroes Alley and Jane to the complainant Gilbert Marshall, and conveyed them by a bill of sale. The proof shows that Mary Stephens knew of this sale, that she was consulted about it, did not object to it, set *173 up no claim to the negroes under the deed of trust, but on the contrary, expressed her satislaction that Marshall was about to buy them, and held out inducements for him to do so. Subsequently Wooldridge, the trustee, died, and the convey-anee from Mary Stephens to him is lost or destroyed, having' never been registered.
Marshall kept possession of the negro woman Alley and Jane with their increase, which is now considerable, from the aforesaid date of the 30th day of November,' 1829, without let, molestation or complaint on the part of Mary Stephens, or others up to that of the 21st of September, 1843, when he finding that the conveyance from Mary Stephens to John H. Wooldridge had not been registered and could not be produced, became uneasy about his title to said negroes, and filed his bill to have it perfected, which is resisted upofi the ground, ■ that the conveyance of Mary Stephens to John H. Wooldridge, was not of such a character as is required by the power of appointment, and is therefore void and passed no title; and that under the trust she is entitled to have the ne-groes against Marshall during her life, and. her heirs after her death if she die without executing the power of appointment.
As we have seen, Mary Stephens is empowered by the deed of trust, to convey the negroes at any time during her life, by deed of gift, or dispose of them by will. We are satisfied that this power is to be strictly construed, and that under it she could not convey, by a bill of sale, but we do not think, (as has been argued) that the power of appointment is confined to an execution in favor of her • own children, but that it is a general power of appointment by will or deed of gift. We are also satisfied .that it must be proven that the power was executed by her, and'in a legal manner; and that it devolved upon Marshall to establish this fact. But it is a fact to be proven like all others; positive proof is not required, but such *174 proof only as will warrant a legitimate presumption or inference that it exists. That Mary Stephens is a feme covert, places this case in no different position as to the weight of proof which would be required to establish this fact, from what it would occupy if she were a feme sole; for in executing the power she would be acting as a feme sole, and* the same rules and construction of evidence is applicable as if she were.
We hold it to be a sound principle, supported by both justice and reason, that when there is a power of appointment, which has been exercised, and there be a legal, and an illegal mode of exercising it, and the proof leaves it doubtful which has been used, the legal presumption in favor of innocent purchasers, or meritorious claimants is, that it has been the legal one. This proposition will not be disputed, and it is decisive of this case, unless we were to require positive proof of the legal execution; which we can upon no principle of law known to us, do. The. proof shows, that Mary Stephens conveyed by a written instrument her interest in the negroes, Alley and Jane to John H. Wooldridge. This she had the power to do, provided it was done by a deed of gift, but not by a bill of sale. The instrument not having been registered, and having been lost, or destroyed, it has become impossible to show which it was; shall we then presume that it was by deed of gift, or by bill of sale ? The presumption is always in favor of legal obedience and never against it; and moreover, upon what principle shall it be presumed, that the execution of the power was by bill of sale rather than by deed of gift? The title of personal property passes as well by one as the other, and there was no reason to induce the use of the one which was illegal, in preference to the one which was legal. That Wooldridge paid the debts, which were embarrassing Mary Stephens in the enjoyment of the trust property, is no argument in favor of the presumption that the conveyance was by bill of sale, *175 but in our judgment the reverse; it is shown that the debts were not of equal value to the negroes conveyed; the payment of them then could only have been inducement to and not consideration for the conveyance; for if it had been the consideration the negroes would have been sold to the best purchaser. But Wooldridge was the son-in-law of Mary Stephens; she was desirous of keeping the negroes in the family, and also of procuring others; she was apprehensive they might be sold for the purpose of paying the debts; to do this it' was necessary that the debts should be paid and paid by Wool-dridge, and in consideration of his doing so, she agreed to give and did give to Mm the negroes Alley and Jane, and did not sell them to Mm; the fact that Wooldridge paid these debts constitutes him a more meritorious donee than he would otherwise have been, and the more thoroughly entitled to the aid of a court of chancery in establishing the execution of the power: if he has the right, complainant, his vendee, Marshall, has as strong, if not stronger, claim upon the aid of that court for the same purpose. Had the cestui que trust in the present instance been a man instead of a woman and feme covert, we apprehend a different rule for the government of the case would never have been contended for. But the rule is the same in either case; as we have already observed, though a feme covert, in the execution of this power Mary Stephens was acting as a feme sole, and the rules of construction are the same when a power is to be executed, whether the person executing it be a man or a woman. There is nothing in the objection that the gift is made to the trustee; a trustee may contract with a cestui que trust in relation to the trust property provided it be done in good faith, without fraud or imposition, and where a cestui que trust is empowered to give away the trust property, it may under the same restrictions be given to the trustee. We are satisfied that this, *176 transaction between the trustee and cestui que trust in this instance, (to use a phrase from criminal law) was omni exceptione majores.
We therefore think, that the complainant by virtue of his contract of sale with John H. Wooldridge obtained the legal title to the negroes in controversy, and is entitled to the relief given him by the decree of the chancery court which is affirmed.